Richard A. and Phyllis L. BOEHNING, and Louise K. Heinold, Petitioners,

v.

STATE BOARD OF TAX COMMISSIONERS, Respondent.

No. 49T10–9905–TA–128.

Tax Court of Indiana.

Oct. 4, 2001.

Publication Ordered Feb. 5, 2002.

Beverly B. Hamersly, Indianapolis, IN, Attorney for Petitioners.

Steve Carter, Attorney General of Indiana, Vincent S. Mirkov, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Richard Boehning, Phyllis Boehning, and Louise Heinold (collectively, the Taxpayers) appeal the final determination of the State Board of Tax Commissioners (State Board) valuing their property for the March 1, 1995 assessment date.

## ISSUES

I. Whether the settlement of an appeal on a neighboring parcel can be considered by this Court in its ruling; and

II. Whether the State Board erred in classifying the majority of Taxpayers' property as primary commercial/industrial land.

## FACTS AND PROCEDURAL HISTORY

The Taxpayers, along with Harvey Gutwein, own an operational aggregate stone quarry in Pulaski County, Indiana.

Eighty (80) acres of the quarry are owned by and assessed to the Taxpayers (Parcels 013–00060–00 and 013–00061–00). The other seventy-eight (78) acres of the quarry are owned by and assessed to Gutwein (Parcel 013–000198–00).

For the March 1, 1995 assessment date, the Pulaski County assessing officials classified the Taxpayers' property as follows: seventy-six (76) acres as primary commercial/industrial land; 3.32 acres as undeveloped usable commercial/industrial land; and 0.68 acres as roadway land.[1] The Taxpayers challenged the assessment, alleging that only one acre should have been assessed as primary land, and essentially the rest should have been classified as undeveloped/unusable commercial/industrial land. At the same time, Gutwein also challenged the 1995 assessment of his property, raising similar issues of land classification.

On review, the Pulaski County Board of Review (BOR) chose not to reclassify the Taxpayers' land. Accordingly, the Taxpayers appealed their assessment to the State Board. At this point, Gutwein's appeal had also reached the State Board, and so on March 30, 1998, the State Board held a joint hearing on the Taxpayers' and Gutwein's appeal. On April 12, 1999, the State Board issued a final determination on the Taxpayers' appeal, upholding the BOR's classifications. The State Board did not, however, issue a final determination on the Gutwein appeal.

The Taxpayers filed an original tax appeal with this Court on May 24, 1999, and trial was held on February 3, 2000. Gutwein filed an original tax appeal with this Court on May 27, 1999, however, this Court remanded the case to the State Board to correct deficiencies in its administrative record. On February 29, 2000,

---

**1.** The Taxpayers' roadway land was assigned an assessed value of zero. (Stip. Ex. 4.)

Gutwein and the Pulaski County assessing officials reached a settlement of the issues, eliminating the need for trial. On March 14, 2000, the State Board issued a final determination on Gutwein's appeal, incorporating the settlement terms. Additional facts will be supplied as necessary.

### STANDARD OF REVIEW

■ This Court gives great deference to final determinations of the State Board. *Wetzel Enters. Inc. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1259, 1261 (Ind. Tax Ct.1998). Accordingly, this Court will reverse a State Board final determination only if it is unsupported by substantial evidence, is arbitrary or capricious, constitutes and abuse of discretion, or exceeds statutory authority. *Id.*

■ The taxpayer bears the burden of showing the invalidity of the State Board's final determination. *See Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998). In bearing that burden, a taxpayer may only present evidence to this Court that he or she originally presented at the administrative level. *State Bd. of Tax Comm'rs v. Gatling Gun Club, Inc.,* 420 N.E.2d 1324, 1328 (Ind.Ct. App.1981). Thus, this Court may only review the testimony of those witnesses who testified at the administrative hearing, the facts to which those witnesses testified, and those exhibits that were introduced at the administrative hearing. *Id.*

### DISCUSSION

### I. The Effect of Gutwein's Settlement On Disposition of This Case

■ In one of its post-trial briefs, counsel for the Taxpayers discusses the settlement reached in the Gutwein appeal. Specifically, counsel argues that the settlement resolution of certain land classification issues in that case constitutes legal precedent and should therefore control the outcome of this case. (Pet'rs Reply Br. at 3–5.)

The State Board subsequently filed a motion to strike that portion of the Taxpayers' brief (Resp'ts Motion to Strike at 1), arguing that under Indiana Evidence Rule 408,[2] evidence regarding compromises and settlements of claims is not admissible. The Court agrees.

■ The general intent of Indiana Evidence Rule 408 is to encourage parties to engage in settlement negotiations without a judgment or admission of liability or wrong-doing. *See Four Winns, Inc., v. Cincinnati Ins. Co.,* 471 N.E.2d 1187, 1189–90 (Ind.Ct.App.1984), *trans. denied.* To allow the Taxpayers to use the settlement reached in the Gutwein appeal thwarts the intent of that rule. Indeed, the Taxpayers attempt to use the settlement in Gutwein as a State Board "admission" that its land classifications in this case are erroneous.

2. Indiana Evidence Rule 408 provides in pertinent part:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to compromise a claim, which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution. Compromise negotiations encompass alternative dispute resolution.

Evid.R. 408.

 Furthermore, to allow the Taxpayers to use the settlement would have a chilling effect on the incentive of all assessing officials to resolve cases outside the courtroom. Courts would be wise not to endorse such a policy—their dockets are overloaded enough as it is. Accordingly, the State Board's Motion to Strike the portion of Taxpayers' brief entitled "Companion Case is Precedent" is GRANTED.[3]

## II. Classification of Taxpayers' Land

 For the 1995 general reassessment, commercial and industrial land was classified according to its use. *See* IND. ADMIN. CODE, tit. 50, 2.2–4–1 (1996). Specifically, an assessing official would classify the land accordingly:

"Primary commercial or industrial land" refers to the primary building or plant site. The following are examples of primary land:

 (A) Land located under buildings.

 (B) Regularly used parking areas.

 (C) Roadways.

 (D) Regularly used yard storage.

 (E) Necessary support land.

"Secondary commercial or industrial land" refers to land utilized for purposes which are secondary to the primary use of the land. The following are examples of secondary land:

 (A) Parking areas that are not used regularly.

 (B) Yard storage that is not used regularly.

\* \* \* \*

"Unusable undeveloped commercial and industrial land" means vacant land that is unusable for commercial or industrial purposes.

"Usable undeveloped commercial and industrial land" means vacant land that is held for future commercial or industrial development.

50 IAC 2.2–4–1. Using these regulations, the Pulaski County assessing officials found that of the Taxpayers' eighty (80) acres, seventy-six (76) were primary, 3.32 were unusable/undeveloped, and 0.68 acres were public roadway.

To better understand their assessment, however, the Taxpayers contacted the State Board to ascertain what criteria it used to classify quarry land. The State Board forwarded a document that stated in relevant part:

Open area [in a quarry] being worked would qualify as primary industrial, immediate area around the open area would qualify as industrial undeveloped land, land being reclaimed or put back to present use may qualify as industrial un-developed nonusable or possibly agricultural land, farm land should be valued at agricultural rates using the soil productivity method.

(Stip. Ex. 3.)[4]

The Taxpayers subsequently appealed, first to Pulaski County and then to the State Board. Throughout the process, the Taxpayers, relying on the document forwarded to them by the State Board, presented detailed testimony that their prop-

---

**3.** Nevertheless, when, as in Gutwein, the parties have agreed upon or stipulated to an assessment, those stipulations are eventually documented on the appropriate property record card. Property record cards are a matter of public record, and may be used by subsequent taxpayers in assessment challenges to indicate similarities between properties. It is the State Board's duty to ensure that similar

properties are assessed consistently. *Alcoils, Inc. v. State Bd. of Tax Comm'rs*, 727 N.E.2d 795, 801 (Ind. Tax Ct.2000).

**4.** This document was from the January 1991 Assessors' Conference Questions and Answers. (Pet'rs Petition for Review of Final Assessment Determination at 2.)

erty should be reclassified under IAC 2.2–4–1. Specifically, the Taxpayers testified that only one acre should be designated as primary land. This one acre, they explained, is comprised of a "floating acre"[5] that Taxpayers share equally with their neighbor, Gutwein, as well as the half acre of land under their administrative office building. (Stip. Ex. 1; Trial Tr. at 19–20.)

Taxpayers also claimed that adjacent to the county road on the southeast portion of the property, there was a twelve (12) acre area where stone was piled after it was taken out of the quarry pit. (Stip. Ex. 1; Trial Tr. at 21.) Taxpayers asserted that this area is not used to store machines or equipment but is simply a place to pile the stone until the trucks come in to pick it up. (Stip. Ex. 1; Trial Tr. at 21.) Taxpayers contend that the twelve (12) acres should be therefore be classified as "usable undeveloped."

Furthermore, Taxpayers explained that 4.06 acres is under the railroad right of way and that 0.6 acres of the property is under the road right of way. (Stip. Ex. 1; Trial Tr. at 16.) Thus, the Taxpayers argue that the 4.12 acres should be valued at zero, as they exercise no control over that property. (Stip. Ex. 1; Trial Tr. at 17.)

Finally, the Taxpayers argued that the balance of the property (62.88 acres) should be classified as unusable undeveloped because it is the immediate area surrounding the "floating acre." Specifically, the Taxpayers asserted that about forty-two (42) acres is the bottom of the pit, and another twenty (20) acres is where they dump aggregate waste. (Trial Tr. at 21–22.) According to the Taxpayers, these twenty (20) acres cannot be farmed or developed.

In its final determination, the State Board explained:

> After inspecting the property, reviewing the property record card, Petitioner's [Stipulated Exhibit 3] ... it is determined that the land classifications are correct. Petitioner's [Stipulated Exhibit 3] is from the January 1991 Assessors' Conference Questions and Answers. This petition is for 1995. The petitioner failed to submit evidence to substantiate the assessment is incorrect. Without specific evidence to show an error exist [sic] it is determined no change in the land assessment is made as a result of this issue.

(Stip. Ex. 2 at 33.) Thus, the State Board denied the Taxpayers' appeal on a "falling domino" theory: 1) Taxpayers submitted an outdated State Board document to support their claim; 2) because the document was outdated, it would not be considered; 3) the Taxpayers therefore failed to submit evidence to substantiate their claim. There is, however, a flaw in the State Board's reasoning.

The State Board argues that because the document was not applicable, there was no evidence to support the Taxpayers' claims. What the State Board fails to recognize is that while there may have not been any *written* evidence, there was enough detailed testimony to present a prima facie showing that the land was incorrectly classified. *See Western Sel. Prop. v. State Bd. of Tax Comm'rs*, 639 N.E.2d 1068, 1074 (Ind. Tax Ct.1994).

---

**5.** The State Board subsequently sent another document to the Taxpayers that stated: "We [the State Board] use the concept of assigning a 'floating' acre to the parcel where the actual shovel is located. This 'floating' acre plus the acreage used for roads, maintenance facilities, scale areas, crushing facilities, loading facilities, and administrative offices are considered industrial primary acreage...." (Stip. Ex. 6.)

■ Once the Taxpayers made their prima facie showing that their land classifications were inconsistent with Indiana Administrative Code, title 50, 2.2–4–1, it was incumbent on the State Board to rebut the Taxpayers' evidence. *See id.* Instead, the State Board simply rejected the testimonial evidence because it was not supported by written evidence.[6] This is not a sufficient rebuttal. *See id.* Indeed, "when a taxpayer offers probative evidence, that evidence must be dealt with in some meaningful manner." *Clark,* 694 N.E.2d at 1235. By not rebutting the Taxpayers' evidence, the State Board failed to deal with it in a meaningful manner. This Court will not uphold a State Board decision rejecting Taxpayers' evidence when the State Board fails to make any findings that it is inaccurate or unreliable. *See Canal Square Ltd. Ptrs. v. State Bd. of Tax Comm'rs,* 694 N.E.2d 801, 807 (Ind. Tax Ct.1998) (citations omitted).

## CONCLUSION

For the foregoing reasons, this Court finds the State Board's final determination is invalid. Accordingly, the assessment is REVERSED and REMANDED to the State Board to reclassify the Taxpayers' land consistent with the testimonial evidence presented by the Taxpayers at the administrative hearing.

## *ORDER*

On December 6, 2001, a non-party filed a Motion for Publication of Memorandum Decision in this matter. Notice was given to the parties through their respective counsel of record. No objections have been filed.

The Court, having considered the same and being duly advised in the premises, now finds said motion should be GRANTED and that this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The non-party's "Motion for Publication of Memorandum Decision" is granted and this Court's opinion handed down on October 4, 2001, marked "Not for Publication" in now ordered published.

---

**6.** At trial, the State Board hearing officer testified:

 Q: So, if Mr. Boehning told you, "Here's what the breakdown on the acreage is," ... then you basically disregarded his testimony, didn't you?

 A: ... He testified, but he gave no actual outlines on the map or no legal descriptions, or he could have provided a record of the right of way.

 Q: If he gave you information as to what the acreages were for the various things, various attributes and types of property ... he gave you specific numbers, then you either ... would use his testimony or you would disregard it, wouldn't you? And in this case, you chose to disregard his testimony.

 A: I considered it had very little weight....