COMMONWEALTH EDISON
COMPANY OF INDIANA,
INC., Petitioner,

v.

DEPARTMENT OF LOCAL GOVERN-
MENT FINANCE,[1] Respondent.

Nos. 49T10–9507–TA–67, 49T10–9607–
TA–82, 49T10–9707–TA–163,
49T10–9807–TA–81.

Tax Court of Indiana.

Dec. 23, 2002.

---

1. The State Board of Tax Commissioners ("State Board") was originally the Respondent in this appeal. However, the legislature abolished the State Board as of December 31, 2001. P.L. 198–2001, § 119(b)(2). Effective January 1, 2002, the legislature created the Department of Local Government Finance ("DLGF"), *see* Indiana Code § 6–1.1–30–1.1 (West Supp.2001)(eff.1–1–02); P.L. 198–2001, § 66, and the Indiana Board of Tax Review ("Indiana Board"). IND. CODE § 6–1.5–1–3 (West Supp.2001)(eff.1–1–02); P.L. 198–2001,

§ 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND. CODE § 6–1.5–5–8 (West Supp. 2001)(eff.1–1–02); P.L. 198–2001, § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to these appeals. *Id. See also* P.L. 198–2001, § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

Daniel P. Byron, Jeffrey T. Bennett, Bingham McHale, LLP, Indianapolis, for Petitioner.

Steve Carter, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, for Respondent.

FISHER, J.

Commonwealth Edison Company of Indiana, Inc. (Commonwealth) appeals the State Board of Tax Commissioners' (State Board) final assessments of its distributable property for the 1995, 1996, 1997, and 1998 assessment years (years at issue). The sole issue is whether the State Board is required to apply equalization adjust-

ments to Commonwealth's assessments for the years at issue.[2]

## FACTS AND PROCEDURAL HISTORY

Commonwealth is a public utility company that owns an electric generating station in Lake County, Indiana. For each of the years at issue, Commonwealth filed an annual statement of value with the State Board pursuant to Indiana Code § 6–1.1–8–19. With each statement, Commonwealth requested that the State Board apply an equalization adjustment to its assessment to account for the disparate levels of assessment in Lake County.

The State Board subsequently issued tentative assessments of Commonwealth's property for each of the years at issue without the requested adjustments. Com-

monwealth objected, and the State Board held four separate hearings. The State Board then issued orders making its tentative assessments final, stating that Commonwealth failed to show that its property was entitled to equalization adjustments for the years at issue.[3]

Commonwealth filed four original tax appeals, which the Court consolidated on October 19, 1998. The Court conducted a trial on February 22, 1999. Oral arguments were heard on December 13, 1999. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

■ When this Court reviews a State Board assessment of public utility property, its standard of review is set by statute:

---

**2.** In its complaint, Commonwealth also made the following allegations: 1) Indiana's assessment of tangible property on any basis other than market value violates Article X, § 1 of the Indiana Constitution; 2) capping agricultural land assessments at $495 an acre unfairly discriminates against taxpayers such as Commonwealth and violates Article X, § 1 of the Indiana Constitution; and 3) numerous exemptions and deductions within Indiana's property tax scheme are not provided for in the Indiana Constitution and have the effect of favoring certain types of taxpayers over others, in violation of Article X, § 1 of the Indiana Constitution. (See generally Pet'r Ex. D–1.) The Court need not, however, analyze these state constitutional claims in this opinion. Indeed, in 1998, the Indiana Supreme Court affirmed this Court's determination that the State Board's assessment regulations violate Article X, § 1 of the Indiana Constitution. See State Bd. of Tax Comm'rs v. Town of St. John, 702 N.E.2d 1034, 1043 (Ind.1998) ("Town of St. John V"). That same year, however, this Court declared that "[r]eal property must still be assessed, and, until the new regulations are in place, must be assessed under the present system." Whitley Prods., Inc. v. State Bd. of Tax Comm'rs, 704 N.E.2d 1113, 1121 (Ind. Tax Ct.1998), review denied; see also Town of St. John v. State Bd.

of Tax Comm'rs, 729 N.E.2d 242, 246 & 251 (Ind. Tax Ct.2000) ("Town of St. John VI") (ordering real property in Indiana to be reassessed under constitutional regulations as of March 1, 2002 and providing that until then, "property tax assessments shall be made in accordance with the current system").

Commonwealth also complains that in denying the equalization adjustments, the State Board violated its equal protection rights under the Fourteenth Amendment to the U.S. Constitution. (See Pet'r Br. at 22–23.) As a result of this alleged violation, Commonwealth claims that it is entitled to relief under 42 U.S.C. §§ 1983 and 1988. This Court has in the past rejected analogous equal protection arguments, see Town of St. John v. State Board of Tax Commissioners, 690 N.E.2d 370, 388–97 (Ind. Tax Ct.1997) ("Town of St. John III"), rev'd in part on other grounds by 702 N.E.2d 1034 (Ind.1998), and does so now. Consequently, the Court denies Commonwealth relief under the provisions of 42 U.S.C. §§ 1983 and 1988.

**3.** For the years 1995, 1996, and 1997, the State Board awarded Commonwealth no equalization adjustment whatsoever. While the State Board did award an adjustment for 1998, Commonwealth maintains that the adjustment is grossly inadequate.

When a public utility company initiates an appeal under section 30 [of Indiana Code 6–1.1–8], the tax court may set aside the state board of tax commissioners' final assessment and refer the matter to the board with instructions to make another assessment if:

(1) the company shows that board's final assessment, or the board's apportionment and distribution of the final assessment, is clearly incorrect because the board violated the law or committed fraud; or

(2) the company shows that the board's final assessment is not supported by substantial evidence.

IND. CODE § 6–1.1–8–32. "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Glass Wholesalers, Inc. v. State Bd. of Tax Comm'rs*, 568 N.E.2d 1116, 1122 (Ind. Tax Ct.1991) (quoting *State Bd. of Tax Comm'rs v. South Shore Marina*, 422 N.E.2d 723, 731 (Ind.Ct.App.1981)).

## DISCUSSION & DECISION

"The property owned or used by a public utility company shall be taxed in the manner prescribed in [chapter eight of Indiana Code 6–1.1]." IND. CODE § 6–1.1–8–1. Within Chapter eight is a centralized assessment scheme by which the State Board assesses the operating property (distributable property) used in providing utility services. IND. CODE § 6–1.1–8–25. In calculating the value of the distributable property, the State Board first considers the total value (unit value) of the public utility company's property and then subtracts the value of its fixed property.[4] IND. CODE § 6–1.1–8–26(a).

 Once the State Board determines the assessed value of a public utility company's distributable property, it is required to equalize that assessment if necessary. IND. CODE § 6–1.1–8–25(a). "Equalization is a process applied to certain taxpayers and their property by which the assessed value of a taxpayer's property is adjusted so that it bears the same relationship of assessment value to ... true tax value as other properties within the same taxing jurisdiction." *GTE North Inc. v. State Bd. of Tax Comm'rs*, 634 N.E.2d 882, 886 (Ind. Tax Ct.1994) (internal quotation and punctuation omitted). "[T]he equalization process provides the State Board with a method to cure assessment problems and bring all assessments into compliance with Article X, § 1" of Indiana's Constitution, *id.*, which states that

The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.

IND. CONST. Art. X, § 1. *See also* IND. CODE § 6–1.1–2–2.

The dispute in this case arises from the State Board's refusal to apply equalization adjustments to Commonwealth's assessments for the years at issue. As Commonwealth explains:

there has been a chronic disparity between the level of assessment generally prevailing in Lake County, and the level of assessment specifically applying to Commonwealth['s] distributable property. Because Commonwealth [ ] must pay the same tax rates as all other taxpayers in Lake County (which have historically been inflated to the highest levels in the state because of [its] under-

---

4. The fixed property (i.e., non-operating property) of the public utility company is assessed locally by township assessors. IND. CODE § 6–1.1–8–24(b).

assessment problem [ ]), this disparity of assessment has been especially hurtful for Commonwealth[.]

(Pet'r Br. at 1–2.) More specifically, Commonwealth argues that while its property is assessed at approximately 33% of its full market value, "other taxpayers are assessed at an inordinately low percentage of actual or market value." (Pet'r Ex. D–1 at 35.) This, Commonwealth maintains, violates the Article X, § 1 guarantee that its assessment is uniform with others in the state.

■■■ Commonwealth, like any other party challenging the propriety of a State Board final determination, bears the burden of demonstrating its invalidity. *See Clark v. State Bd. of Tax Comm'rs,* 694 N.E.2d 1230, 1233 (Ind. Tax Ct.1998). Thus, Commonwealth must present a prima facie case, or one in which the evidence is "sufficient to establish a given fact and which if not contradicted will remain sufficient." *Id.* (internal quotation and citation omitted).

To meet its burden, Commonwealth prepared numerous sales/assessment-ratio studies and submitted them at its administrative hearings. (Pet'r Exs. H–2, H–3, and H–4.) These studies, prepared by a North Carolina statistical studies consulting firm, examined a random sampling of approximately 200 arm's length sales of real property in Lake County during the years at issue and compared the sales prices on those properties to their corresponding assessed values. The studies indicated that for the years at issue, property in Lake County was generally assessed at between 10% and 11.82% of its actual, or market value, as compared to the 33% difference between Commonwealth's assessed value and market value. (Pet'r Br. at 3.) In order to remedy this disparity,

Commonwealth requested that the State Board equalize its assessments for each of the years at issue.

Although Commonwealth's burden of proof does not shift, the duty of going forward with evidence may shift several times. *See Thorntown Telephone Co., Inc. v. State Bd. of Tax Comm'rs,* 629 N.E.2d 962, 965 (Ind. Tax Ct.1994). Thus, it was incumbent upon the State Board to rebut Commonwealth's evidence. The State Board did not. Instead, in its final determinations, the State Board refused to consider Commonwealth's sales/assessment-ratio studies. Specifically, the State Board found that

[t]he quality of the evidence presented by [Commonwealth] regarding the level of assessment in Lake County and its market value is suspect. However, none of it would matter, even if it were credible. The standard for the valuation of property is true tax value, not market value.

(*See, e.g.,* Resp't Ex. 1 at 59.) The Court disagrees.

### A. Evidence of Market Value in Equalization Cases

■■■ The State Board is correct that Indiana does not assess property on the basis of its fair market value. Indeed, during the years at issue, property was assessed pursuant to the statutory standard of "true tax value." *See* IND. CODE § 6–1.1–31–5. True tax value was not fair market value, but rather the value that was determined under the State Board's assessment regulations. *See* IND. CODE § 6–1.1–31–7(d). The use of the "true tax value" standard in Indiana has caused numerous problems, the most relevant being the lack of uniformity in assessment amongst taxpayers.[5]

---

5. For nearly a decade, Indiana's property tax assessment system has been the subject of

In states where assessment is based on market value, the most widely used and accepted tool for measuring assessment uniformity is the sales/assessment-ratio study. *See* JERROLD F. JANATA, ED., *PROPERTY TAXATION* 154 (2d. ed.1993); (Trial Tr. at 62–3.) *See also Louisville Nash. R.R. Co. v. Public Serv. Comm'n,* 493 F.Supp. 162, 164 n. 2 (M.D.Ten.1978) *aff'd by* 631 F.2d 426 (6th Cir.1980) (stating that properly conducted, sales/assessment-ratio studies are objective, efficient, and standard methods of measuring uniformity). To date, however, neither the State Board, the legislature, nor the courts have provided any guidance as to how to measure uniformity in a state such as Indiana, where market value is not the assessment standard and, as the State Board contends, irrelevant.

Nevertheless, the State Board has been using market value sales/assessment-ratio studies for years as a basis for providing equalization adjustments to public utility companies. *See* JANATA at 162–64 (discussing the State Board's acceptance of sales assessment-ratio studies premised on a market value analysis as the basis for equalization relief to railroad, electric, and telephone utilities). Furthermore, the State Board has used these sales/assessment-ratio studies for approximately thirty years as the basis for granting equalization adjustments to Commonwealth. (Resp't Exs. 1 at 62; 2 at 62; 3 at 93; and 4 at 51.)

■■■ As our Supreme Court stated, in order to achieve the uniformity and equality requirement of Article X, § 1, property assessment and taxation in Indiana must be "based on property wealth." *Boehm v. Town of St. John,* 675 N.E.2d 318, 328 (Ind.1996) ("*Town of St. John II* "). Property wealth is measured through objectively verifiable data. *State Bd. of Tax Comm'rs v. Town of St. John,* 702 N.E.2d 1034, 1041 (Ind.1998) ("*Town of St. John V* "). It is appropriate for the State Board to calculate assessments based on true tax value; however, when comparing assessments to determine uniformity, an external unit or standard of measurement must be used—one which is objectively verifiable. Our Supreme Court has said that fair market value may well be the standard. *See Town of St. John II,* 675 N.E.2d at 327. This Court believes that fair market value is the standard, and will continue to do so until the State Board rebuts that presumption.[6] Thus, the use of market value based sales/assessment-ratio studies is an acceptable way, within the context of public utility assessment, to determine whether equalization adjustments are necessary to achieve assessment uniformity.

## B. The Quality of Commonwealth's Sales/Assessment Ratio Study

■■■ The State Board also contends that, market value aside, Commonwealth's sales/assessment-ratio studies are unreliable. Again, the Court disagrees.

■■■ The Court recognizes that the State Board may consider many factors in determining unit value of (as well as the

---

extensive state court litigation. *See Town of St. John et. al v. State Board of Tax Commissioners,* 665 N.E.2d 965 (Ind. Tax Ct.1996) ("*Town of St. John I* ") and its prolific progeny. At the heart of this litigation has been the disparity in assessment between similar properties. Ironically, the *Town of St. John* litigation also originated in Lake County, Indiana.

**6.** "One way or another, an assessor must refer to market value in assessing real property for ad valorem tax purposes. Market value is the basis, the touchstone upon which any equitable assessment must rest." JERROLD F. JANATA, ED., *PROPERTY TAXATION* 167 (2d.ed.1993).

application of equalization adjustments to) a public utility, including:

\* \* \* \* \* \*

(6) statistics and reports prepared or filed by the company;

(7) statistics and reports prepared by another governmental agency or by a private organization if the organization is considered reliable by investors and investment dealers;

\* \* \* \* \* \*

(9) any other information which the [state] board considers relevant.

IND. CODE § 6–1.1–8–26(b). The Court also recognizes that the State Board has the discretion to reject submitted statistics and reports if they are unreliable. Here, the State Board argues that Commonwealth's sales/assessment-ratio studies are unreliable for several reasons, including: 1) the studies are based on a sample of sales taken exclusively from two Multiple Listing Services (MLS) only (it should be based on the MLS, as well as all property transfers reflected in the deed book); 2) the random sample of approximately 200 properties was too small; 3) the studies are based primarily on the sale of residential properties in Lake County (the studies should include sales of industrial, commercial, and agricultural properties); 4) it appears the sales prices analyzed in the studies included items not assessable as real property (i.e, personal property); and 5)

the sales used were from the year prior to the actual date of assessment (i.e, while the sales prices reflected market value as of March 1, 1994, the assessments were reflective of the March 1, 1995 assessment date). (*See generally* Resp't Ex. 1 at 51–53.) These are hollow objections.

Commonwealth explained in general how sales/assessment-ratio studies are prepared in accordance with IAAO [7] principles and guidelines, what is and is not included in the sample, and why residential sales are more prevalent in such studies. (Trial Tr. at 57–98.) Because Commonwealth's studies were prepared within these parameters, and given that market value based sales/assessment-ratio studies are the only way by which to measure disparity in assessment uniformity, it made a prima facie case that it was entitled to the requested equalization adjustments. In turn, the State Board simply cannot claim that Commonwealth's studies are unreliable. Rather, it must present substantial evidence indicating what tools taxpayers like Commonwealth can use to measure disparities in assessment uniformity.[8]

**Conclusion**

For the foregoing reasons, Commonwealth has made an unrebutted prima facie showing that its property is entitled to equalization adjustments for the years at issue. Accordingly, the Court REVERSES the State Board's final determination and REMANDS the case to the

7. The International Association of Assessing Officers (IAAO) is an educational and research association of individuals in the assessment/property taxation profession.

8. Here, the State Board asserts that the only assessment-ratio studies it finds useful in determining whether disparities exist in Indiana assessments are the "assessment to assessment" ratio studies. Essentially, in these studies, the State Board reviews assessments previously performed by local assessors. If the State Board arrives at a different true tax value than the local assessors, the difference constitutes the disparity. These studies show nothing more than the inability of both local assessors and the State Board to consistently apply the assessment rules and regulations.

Indiana Board of Tax Review[9] for proceedings consistent with this opinion.

---

9. All cases that would have previously been remanded to the State Board are now remanded to the Indiana Board. IND. CODE § 6–1.1–15–8. Final determinations made by the Indiana Board are subject to review by this Court pursuant to Indiana Code § 6–1.1–15. IND. CODE §§ 6–1.5–5–7; 33–3–5–2.