**DEP'T OF LOCAL GOV'T FIN., as successor to the State Bd. of Tax Comm'rs, Appellant (Respondent below),**

v.

**COMMONWEALTH EDISON CO. OF IND., INC., Appellee (Petitioner below).**

No. 49S10–0307–TA–293.

Supreme Court of Indiana.

Jan. 13, 2005.

Rehearing Denied April 1, 2005.

Steve Carter, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Nandita G. Shepherd, Deputy Attorney General, Attorneys for Appellant.

Daniel P. Byron, Jeffrey T. Bennett, Michael S. Prakel, Indianapolis, IN, Attorneys for Appellee.

Thomas M. Atherton, David A. Suess, Indianapolis, IN, Attorneys for Amici Curiae Indiana Chamber of Commerce, Inc., Indiana Manufacturers Ass'n, and BP Products North America, Inc.

## ON PETITION FOR REVIEW

SULLIVAN, Justice.

An electric utility requested that State property tax authorities provide it with property tax relief with respect to certain of its property in Lake County on grounds that residential property owners in the County paid less than Indiana property tax law required. As evidence, the utility relied on studies that showed that the assessed valuation of residential property in the County was well below its fair market value. Indiana property tax law in effect at the time—now significantly reformed—provided that property was to be assessed based on its "true tax value," a basis unrelated to its fair market value. Because the studies offered by the utility in support of its requests were based on fair market value, not the statutory standard of true tax value, the State properly denied the requests.

### Background

Over the past decade, the Indiana property tax system has been overhauled as a consequence of a series of judicial, legislative, and administrative decisions. Prior to this upheaval, property was not assessed on the basis of its fair market value ("FMV") but according to a standard the Legislature called "true tax value" ("TTV"). True tax value, to repeat, was not FMV but rather the value of property determined under regulations promulgated by the State Board of Tax Commissioners ("State Board").[1] The new regime purports to assess property based on its FMV.

This case arises under the old order. It requires us to examine the extent to which the FMV of property was relevant to determining assessed valuation in the TTV world.

The property taxpayer here is Commonwealth Edison Company of Indiana, Inc., a public utility company in the business of providing electricity, which does business within Lake County. Because it is a public utility, Commonwealth is subject to a separate chapter of the property tax code, Indiana Code Sections 6–1.1–8–1 through 43. Under this chapter, public utilities are considered to have two basic types of property subject to property tax: "fixed" and "distributable." "Fixed" property consists of the tangible and real property that is not used to generate the utility's power or service. Ind.Code § 6–1.1–8–9(a) (2004). The township assessor is responsible for assessing fixed property. I.C. § 6–1.1–8–24. "Distributable" property consists of the equipment used to manufacture and deliver the power or service. I.C. § 6–1.1–8–9(b). At the time relevant to this dispute,

---

**1.** On January 1, 2002, the Legislature abolished the State Board of Tax Commissioners and divided the responsibilities previously assigned to the State Board in part to a new Indiana Board of Tax Review and in part a new Department of Local Government Finance. Ind.Code §§ 6–1.5–1–1; 6–1.5–4–1 (Supp.2001); 2001 Ind. Acts 198 § 95. For simplicity sake, we will refer to these various entities as the "State" in this opinion except where more specificity is required or helpful.

the State Board was responsible for assessing distributable property.[2] I.C. § 6-1.1-8-25.

Each year for three decades, Commonwealth had petitioned the State Board for an "equalization adjustment" to the assessed valuation of its distributable property. The basis for its petitions had been that residential and commercial property owned by others in Lake County had been assessed contrary to law at artificially low values, causing Commonwealth's property taxes to be higher than they would have been had this other property been properly assessed. Until 1995, the State Board had granted Commonwealth relief.

When the State Board issued tentative assessment values of Commonwealth's distributable property for the years 1995 through 1998, Commonwealth again sought equalization adjustments. Unlike the prior years, however, the State Board denied Commonwealth's petitions.

Commonwealth appealed the decision of the State Board to the Indiana Tax Court, and the Tax Court reversed. (Subsequent to Commonwealth's filing its appeal but prior to the Tax Court's decision, the Department of Local Government Finance was substituted for the State Board for the reason discussed in footnote 1, *supra*.) *Commonwealth Edison Co. of Ind. v. Dep't of Local Gov't Fin.*, 780 N.E.2d 885 (Ind. Tax Ct.2002). It held that Commonwealth was entitled to equalization adjustments. *Id.* at 891. We granted review, 804 N.E.2d 744 (Ind.2003), and now affirm in

part and reverse in part the decision of the Tax Court.

## Discussion

### I

We believe the crux of this case involves the use of FMV data to achieve assessment uniformity in a regime in which assessments were determined by their TTV. But before reaching that issue, we address several additional issues raised by this case.

### A

■ First, the relief sought by Commonwealth is referred to by both parties as an "equalization" adjustment to its assessed valuation. The State maintains that an individual taxpayer is not authorized by law to seek such relief; that equalization relief can only be provided by the State to a class of taxpayers.[3] Commonwealth—supported by an extremely helpful amici curiae brief—argues more persuasively that the Legislature, if not our Constitution, has provided an administrative and state court remedy for taxpayers with claims of the nature of Commonwealth's here.

The State summarizes its argument as follows:

The Legislature did not intend that an individual taxpayer be able to request an individual equalization adjustment. Nowhere in the property tax statutes has the Legislature explicitly stated that an individual may request an equalization adjustment. There is also no process enumerated in any statute for an indi-

**2.** Under the 2001 statute, *see supra* note 1, the Department of Local Government Finance now has this responsibility, *i.e.*, it continues to be a State responsibility.

**3.** The State says in its brief that, based on its "determination that local assessing officials were systematically underassessing residen-

tial property," it adjusted all 1998 utility property assessments, *i.e.*, it provided equalization relief for a class of all utility taxpayers. Br. of Appellant at 6. The State acknowledges that this was less relief than Commonwealth requested. *Id.*

vidual to request an equalization adjustment.

Br. of Appellant at 24.

A look at the statute providing for equalization lends support to the State's position. Indiana Code Section 6–1.1–14–5(a) reads as follows:

> After holding the hearings referred to in [Indiana Code Section 6–1.1–14–4], the department of local government finance shall, in order to equalize assessed values in any county or in the state as a whole, issue an order increasing or decreasing assessed values of any tangible property if the department finds:
>
> (1) that the assessed values in any county are not uniform and equal as to townships, portions of the same township, or classes of property; or
>
> (2) that the assessed values in this state are not uniform and equal either as between counties or as to classes of property.

The hearings referenced in the initial phrase of this statute are part of another statute that requires the state to review the assessments of all tangible property made by the various counties of this state and consider modification of any county's assessments if it determines that the assessment of that county appears to be improper. I.C. § 6–1.1–14–4.[4]

Read together, the intent of these statutes appears to be to authorize the State to, as the State argues, "provide classwide relief to remedy unequal assessments either in a locality or within a class of property." Br. of Appellant at 24. In other words, these statutes provide the State with the authority to rectify local assessment practices that result in assessed values that do not comply with the constitutional mandate of uniform and equal assessments.[5]

But even though these statutes do not appear to authorize Commonwealth to seek an individual "equalization" adjustment under Indiana Code Section 6–1.1–14–4, we believe that Commonwealth has ample authority—in this case, under Indiana Code Section 6–1.1–8–30 (applicable to utility distributable property), and for property taxpayers generally, under Indiana Code Section 6–1.1–15–1—to contend that its property taxes were higher than they would have been had other property been properly assessed. This issue was decided for all practical purposes in the epic *Town of St. John* litigation where the plaintiffs appealed their individual assessments to challenge and (ultimately bring down) the way in which all property was assessed.[6] While the State initially

---

**4.** These statutes explicitly apply to utility distributive property. Ind.Code § 6–1.1–8–25(a) (2004).

**5.** In 2002, after the years at issue in this case, the State promulgated a series of rules governing equalization proceedings under Indiana Code Section 6–1.1–14–5. *See* Ind. Admin Code tit. 50, rr. 14–1–1 though 10 (2004). These rules are consistent with the State's interpretation of the statute, *i.e.,* they set forth procedures governing classwide relief to remedy unequal assessments either in a locality or within a class of property.

**6.** *See Boehm v. Town of St. John,* 675 N.E.2d 318, 320 n. 2 (Ind.1996) ("The petitioners include ... individually named taxpayers and a certified class of taxpayers who own real estate ... and appealed their individual property assessments."); *Town of St. John v. State Bd. of Tax Comm'rs,* 665 N.E.2d 965, 968 n. 6 (Ind. Tax Ct.1996) ("The Town of St. John ... represents a group of taxpayers who: (1) own real estate in either the Town of St. John ... or St. John Township ...; and (2) appealed their individual property assessments for 1989."); *Bielski v. Zorn,* 627 N.E.2d 880, 886 (Ind. Tax Ct.1994) ("In the case at bar, the Landowners filed their Petition with the State Board ..., alleging that scores of errors in the 1989 general reassessment affected the

contended, at least in general terms, that administrative remedies were not available to the taxpayers bringing this claim, the Tax Court emphatically rejected the State's contention in the first of the *Town of St. John* opinions (*Bielski v. Zorn,* 627 N.E.2d 880, 886 (Ind. Tax Ct.1994)), and the point was never contested thereafter.[7]

■ The State also makes the argument that Commonwealth is not entitled to an equalization adjustment based on this Court's statement in *State Bd. of Tax Comm'rs v. Town of St. John,* 702 N.E.2d 1034, 1043 (Ind.1998) ("*Town of St. John V*"), that the "Property Taxation Clause of the Indiana Constitution does not establish a substantive right to individual assessments evaluating property wealth, nor does it mandate the consideration of independent property wealth evidence in individual tax appeals." But in *Town of St. John V,* this Court also said that "[t]he fact that the Property Taxation Clause does not require the abstract evaluation of property wealth as to individual assessments or give rise to a substantive right to present property wealth evidence in tax appeals of individual assessments does not diminish the existing procedural rights of taxpayers to seek administrative and judicial review." *Id.* at 1040 n. 8. That is, while there is no state constitutional right to "an equalization adjustment," a taxpayer is not foreclosed from pursuing any equalization adjustment provided by exist-

ing statute or regulation. Of course, the precise extent of "existing procedural rights of taxpayers to seek administrative and judicial review" is one of the issues being litigated here. But an equalization adjustment is not precluded by *Town of St. John V.*

Commonwealth was entitled to seek an adjustment to the assessed valuation of its distributable property under Indiana Code Section 6–1.1–8–30 on grounds that its property taxes were higher than they would have been had other property in Lake County been properly assessed.

**B**

■ Second, Commonwealth contends that because the State had for decades granted it the same relief it seeks here on the same grounds, it is estopped or otherwise precluded from denying these petitions.

We do not believe that the State's record of granting the same or similar relief to Commonwealth in the past created any obligation for it to do so here. First, the State's record of granting relief in prior years constitutes no more than settlements of discrete taxpayer claims. The law encourages parties to engage in settlement negotiations in several ways. It prohibits the use of settlement terms or even settlement negotiations to prove liability for or invalidity of a claim or its amount. Ind.

---

Landowners and the class they seek to represent.").

7. Perhaps because it was not a point of contention after *Bielski,* the *Town of St. John* opinions do not indicate the precise procedure for filing claims of this nature. We believe there is ample authority for proceeding under Indiana Code Section 6–1.1–15–1 and Indiana Administrative Code Title 50, Regulation 4.2–3–4 using Forms 130 and 131. *See Lake County Prop. Tax Assessment Bd. of*

*Appeals v. BP Amoco Corp.,* No. 49S10–0309–TA–400, 820 N.E.2d 1231, 1232, 2005 WL 67440 (Ind. Jan. 13, 2005); *Lake Co. Prop. Tax Assessment Bd. of Appeals v. United States Steel Corp.,* No. 49S10–0309–TA–401, 820 N.E.2d 1237, 1240, 2005 WL 67523 (Ind. Jan. 13, 2005); *Town of St. John v. State Bd. of Tax Comm'rs,* 698 N.E.2d 399, 400 (Ind. Tax Ct.1998); *Bielski,* 627 N.E.2d at 885 n. 10 & 886. For utility taxpayers like Commonwealth, of course, the special provisions of Ind.Code § 6–1.1–8 apply.

Evidence Rule 408. It provides that a settlement is neither a judgment nor an admission of liability. *Four Winns, Inc. v. Cincinnati Ins. Co.*, 471 N.E.2d 1187, 1190 (Ind.Ct.App.1984), *transfer denied*. The Tax Court pointed out a strong policy justification for denying settlements precedential effect in property tax cases: "to allow the Taxpayers to use the settlement would have a chilling effect on the incentive of all assessing officials to resolve cases outside the courtroom." *Boehning v. State Bd. of Tax Comm'rs*, 763 N.E.2d 502, 505 (Ind. Tax Ct.2001).

■ Apart from these general rules about settlements, there is specific precedent that equitable estoppel may not be invoked against governmental entities. We recently reaffirmed that proposition in *Equicor Dev. Inc. v. Westfield–Washington Twp. Plan Comm'n*, 758 N.E.2d 34, 39 (Ind.2001).[8] We find its application particularly appropriate here where the State appears to have abandoned past efforts to resolve individual challenges to acknowledged weaknesses in the State's property tax system in favor of systemic reform.

### C

■ Third, in its reply brief in this case, Commonwealth claims the same entitlement to a uniformity adjustment as matter of federal and state constitutional law as it does under the equalization and other statutes. The Tax Court considered and rejected these arguments, *Commonwealth*, 780 N.E.2d at 887 n. 2, and Commonwealth did not appeal the Tax Court's determination on this issue. The fact that Commonwealth raised this issue in its reply brief is not enough to invoke our jurisdiction. Compare the appellate rules governing transfer cases (Ind. Appellate Rule 58(A) (last sentence)) and tax cases (App. R. 63(K)).

### II

■ As noted *supra*, when the State Board issued tentative assessment values of Commonwealth's distributable property for the years 1995 through 1998, Commonwealth sought equalization adjustments. Because it was challenging the State Board's determination, Commonwealth had the burden of demonstrating the invalidity of the State's determination. *State Bd. of Tax Comm'rs v. Indianapolis Racquet Club*, 743 N.E.2d 247, 252 (Ind.2001). To meet that burden, Commonwealth submitted "sales/assessment-ratio" studies that compared the assessed valuation (as determined by the township assessors) of certain primarily residential (but also some commercial) properties in Lake County with those properties' sales prices, *i.e.*, their fair market value. Commonwealth's argument in general was this: (1) the tentative assessed value of Commonwealth's distributable property (as determined by the State Board) equaled approximately those properties' FMV; (2) the sales/assessment-ratio studies showed that other properties in Lake County were assessed for property tax purposes well below FMV; and (3) assessment uniformity requirements embodied in Indiana statutes and the United States and Indiana Constitutions dictated that the tentative assessed value of Commonwealth's distributable property be adjusted downward ("equalized") so that the ratio it bore to its FMV was approximately the same ratio as the ratio of assessed valuations to sales prices

---

8. *Equicor* was a highly unusual case in which the estoppel was applied. But none of the circumstances which caused us to create an exception to the general rule in *Equicor* are present in this case. *See Fulton County Advisory Plan Comm'n v. Groninger*, 810 N.E.2d 704, 710 (Ind.2004) (explaining why *Equicor* was "highly unusual").

of the properties in the sales/assessment-ratio studies.

The State Board denied Commonwealth's petitions for the years in question. It did so on the basis that the sales/assessment-ratio studies were irrelevant for this purpose because the studies were based on FMV and the standard for valuing property at the time was true tax value.

Commonwealth appealed the decision of the State Board to the Indiana Tax Court and the Tax Court reversed. The Tax Court's analysis was roughly this: Commonwealth met its burden of establishing a prima facie case that it was entitled to adjustments to its distributive property's assessed valuation from the years in question by presenting the sales/assessment-ratio studies; once it established this prima facie case, the burden shifted to the State to rebut this evidence; because the State did not rebut this evidence, Commonwealth was entitled to adjustments for the years in question. *Commonwealth*, 780 N.E.2d at 890, 891.

In finding that Commonwealth's sales/assessment-ratio studies were sufficient evidence to establish Commonwealth's entitlement to assessed valuation adjustments, the Tax Court rejected the State's contention that because they were based on FMV, not TTV, the studies were not relevant evidence:

> [W]hen comparing assessments to determine uniformity, an external unit or standard of measurement must be used—one which is objectively verifiable. Our Supreme Court has said that fair market value may well be the standard. *See [Boehm v. Town of St. John,*

675 N.E.2d 318, 327 (Ind.1996) (*"Town of St. John II"*) ]. This Court believes that fair market value is the standard, and will continue to do so until the State Board rebuts that presumption. Thus, the use of market value based sales/assessment-ratio studies is an acceptable way, within the context of public utility assessment, to determine whether equalization adjustments are necessary to achieve assessment uniformity.

*Commonwealth*, 780 N.E.2d at 890 (full citation form substituted for short form) (footnote omitted).

To decide this question, we need to start with the nature of the TTV system.[9] As discussed at the outset under *Background, supra*, during the years in question, Indiana did not assess property on the basis of its FMV but rather under the State Board's assessment regulations. Ind.Code § 6–1.1–31–7(d) (2004). The assessors (usually township elected officials but sometimes others, *e.g.*, the State Board in cases of utility distributive property) would apply the regulations to the applicable class of property and this would generate the TTV of the parcel or piece of property. An individual assessor might perform this process correctly—or incorrectly. There is substantial discussion in the papers in this and other cases that residential property in Lake County was "systematically underassessed" during the years at issue in this case. Assuming this to have been the case, it means that the township assessors systematically determined the TTV of Lake County residential property to be less than what the TTV

---

9. In an attempt to simplify the discussion somewhat, we ignore the fact that "assessed value" and "assessed valuation" were defined by statute during the years in question to mean an amount equal to 33–1/3% of the TTV of property. Ind.Code § 6–1.1–1–3 (1992 & 1996). The 33–1/3% is a constant that has no economic effect for any purposes in this discussion. The 33–1/3% factor has been repealed for assessment dates after February 28, 2001. *See* P.L. 6–1997 § 6.

would have been if the assessors had properly applied the assessment regulations.

This point bears repeating: if residential property in Lake County was "systematically underassessed" during the years at issue in this case, it means that the township assessors systematically determined the TTV of Lake County residential property to be less than what the TTV would have been if the assessors had properly applied the assessment regulations. Note as well what this does *not* mean: it does *not* mean that that the township assessors systematically determined the TTV of Lake County residential property to be less than its FMV. That would have been the case if Indiana had assessed property on the basis of FMV, but Indiana did not.

The point we made in *Town of St. John II,* to which the Tax Court alludes in the passage quoted above, was not that FMV is a standard by which uniformity could be measured in the TTV system. Rather, it was simply that a system that assessed all property on the basis of its FMV would meet "our constitution's requirements for uniform and equal rates of assessment and taxation and for just valuation." *Town of St. John II,* 675 N.E.2d at 327. We believe that the standard by which uniformity was measured in the TTV system was as follows: property of the class in question accurately assessed in accordance with the applicable regulations of the State Board.

 Commonwealth's evidence compared the TTV (as determined by the township assessors) of certain residential and commercial properties with the FMV of those residential and commercial prop-

erties. It then asserted, apparently without evidence, that the TTV (as determined by the State Board) of its own distributable property equaled the FMV of that property. It then asked for an adjustment of the assessed valuation of its distributable property so that the ratio of the adjusted value of its distributable property to its FMV would equal the ratio of the TTV (as determined by the township assessors) of certain residential and commercial properties to the FMV of those residential and commercial properties.

 Because Commonwealth's evidence of that latter ratio was based on FMV as the standard by which uniformity would be measured, it was not relevant to determining whether Commonwealth was entitled to an adjustment in the TTV system. To establish its claim for an adjustment, Commonwealth was required to produce evidence that the assessed values in Lake County were not uniform and equal *with respect to the TTV* of the classes of property in question.[10] That is, it was required to come forward with evidence that the assessed valuation as determined by the State Board of its distributable property in Lake County in proportion to the TTV of that property was not uniform and equal to the assessed valuation as determined by the township assessors of other taxable property in the County in proportion to the TTV of that property.

We acknowledge that the TTV system is subject to the criticism that, because the regulations for assessing different classes of property operated differently from one another, there was no common standard for measuring uniformity. The Tax

---

**10.** *See GTE N. Inc. v. State Bd. of Tax Comm'rs,* 634 N.E.2d 882, 886 (Ind. Tax Ct.1994) ("Equalization 'is a process applied to certain taxpayers and their property by which the assessed value of a taxpayer's property is adjusted so that it bears the same relationship of assess[ment] value *to ... [true tax value]* as other properties within the same taxing jurisdiction.' ") (quoting Jerrold F. Janata, ed., Property Taxation 608 (2d ed.1993)) (bracketed material in original) (emphasis added).

Court's desire for a common standard for measuring uniformity is understandable—and apparently achieved in the new FMV world in which we now live. But so long as TTV was set differently for different classes of property, uniformity under the statute consisted of the assessed valuations (as determined by the appropriate assessing authorities) of each class of property in question being in proportion to the TTV of each respective class.

### Conclusion

We affirm in part and reverse in part the decision of the Tax Court. The State Board properly dismissed Commonwealth's petitions.

SHEPARD, C.J., and DICKSON, BOEHM, and RUCKER, JJ., concur.