**LAKE COUNTY PROPERTY TAX ASSESSMENT BOARD OF APPEALS, John Matanovich, in his official capacity as North Township Assessor, Peter Benjamin, in his official capacity as Lake County Auditor, Paul G. Karras, in his official capacity as Lake County Assessor, and Peggy Holinga Katona, in her official capacity as Lake County Treasurer, Petitioners (Respondents below),**

v.

**BP AMOCO CORPORATION n/k/a BP Products North America, Inc., Respondent (Petitioner below).**

No. 49S10–0309–TA–00400.

Supreme Court of Indiana.

Jan. 13, 2005.

Rehearing Denied April 1, 2005.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General of Indiana, Nandita G. Shepherd, Department of Local Government

Finance, Attorneys for North Township Assessor.

Brian P. Popp, Merrillville, IN, Attorneys for the Lake County Property Tax Assessment Board of Appeals and for the Lake County Assessor.

John S. Dull, Crown Point, IN, Attorney for the Lake County Auditor and Treasurer.

Jeffrey T. Bennett, Hamish S. Cohen, Steven G. Cracraft, Indianapolis, IN, Attorneys for Respondent.

## ON PETITION FOR REVIEW.

SULLIVAN, Justice.

In May 1999, an industrial concern filed property tax appeals claiming that the taxes on its Lake County personal property covering the five-year period from 1995 through 1999 were "illegal as a matter of law." The taxpayer's specific claim was that the county had "systematically under-assessed property in Lake County to [its] detriment." Indiana law in effect at the time permitted challenges to assessments on this basis but required them to be made only to the current year's assessment, not prior years'. As such, the local and state property tax authorities correctly dismissed the appeals covering 1995 through 1998.

### Background

The taxpayer here, BP Amoco Corporation, now known as BP Products North America Inc., concluded that certain of its personal property in Lake County had been improperly assessed for property tax purposes during the five years from January 1, 1995, through December 31, 1999. On May 10, 1999, BP filed papers challenging the assessments for the 1995–1999 years and seeking refunds of a portion of the property taxes it paid for the 1995–1998 years.

Indiana property tax law contains appeal provisions that allow taxpayers to challenge assessments, provisions that provide for full hearing and judicial determination at which a taxpayer may raise any and all constitutional objections to the tax. The procedures for doing so are set forth in Indiana Code Section 6–1.1–15–1 and Indiana Administrative Code Title 50, Regulations 4.2–3–3 and 4. On a form denominated "Form 130, Petition to the County Board of Review for Review of Assessment," a taxpayer who "disagree[s] with the assessment made by an assessing official" sets forth "[t]he reasons why the petitioner believes that the assessment determination by the township assessor is erroneous." Ind. Admin. Code tit. 50, r. 4.2–3–3 (1996). The petition is reviewed by local and state property tax authorities [1]—in this case, the Lake County Board of Review and the State Board of Tax Commissioners [2]—and is subject to judicial

---

1. If an appeal on Form 130 is rejected by the local property tax authority, an appeal to the state authority is made on Form 131. The combined procedure is sometimes referred to as "the 130/131 appeals procedure." *See United States Steel Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals,* 785 N.E.2d 1209, 1214 n. 12 (Ind. Tax Ct.2003).

2. On January 1, 2002, the Legislature abolished the State Board of Tax Commissioners and established an Indiana Board of Tax Review. Ind.Code §§ 6–1.5–2–1; 6–1.5–4–1 (Supp.2001); 2001 Ind. Acts 198 § 95. For

purposes of this case, the Indiana Board has the power and authority previously held by the State Board. As a result, even though BP appealed to the State Board of Tax Commissioners, the Indiana Board of Tax Review issued the final determination in this case.

The same legislation also replaced individual county "Boards of Review" with county "Property Tax Assessment Boards of Appeals." In this case, therefore, the Lake County Board of Review is now the Lake County Property Tax Assessment Board of Appeals.

review, as provided by applicable statutes and regulations.

BP challenged the 1999 assessments by filing appeals on Form 130 with the appropriate tax officials on May 10, 1999.[3]

The procedures set forth in Indiana Code Section 6–1.1–15–1 and Indiana Administrative Code Title 50, Regulation 4.2–3–3 and Form 130, however, are only available to challenge a current year's assessment. To challenge its assessments for the 1995–1998 period, therefore, BP used a different set of procedures and forms.

Another statute and several regulations, Indiana Code Section 6–1.1–15–12 and Indiana Administrative Code Title 50, Regulations 4.2–3–4, 12 and 14, provide taxpayers with the opportunity to appeal assessments on a form denominated "Form 133, Petition for Correction of Error," within three years from the date the taxes were first due. BP challenged the 1995–1998 assessments by filing appeals on Form 133 with the appropriate tax officials on May 10, 1999. It is these filings that are the subject of this case.

The grounds on which challenges may be made on Form 133 are more limited than challenges to current assessments on Form 130. See Ind.Code § 6–1.1–15–12 (2004). One ground on which a challenge may be made on Form 133 is where the taxpayer contends that "[t]he taxes, as a matter of law, were illegal." I.C. § 6–1.1–15–12(a)(6). That is the ground upon which BP Amoco relies, i.e., it contends that it is entitled to a refund of a portion of the taxes it paid on its personal property

for the years 1995–1998 because "the taxes, as a matter of law, were illegal."

BP's challenges were denied by both local and state property tax authorities, in each case without a hearing, on grounds that the relief BP sought was not available under Indiana Code Section 6–1.1–15–12 and Form 133. BP then sought judicial review in the Indiana Tax Court. The Tax Court concluded that while "[t]he claims raised in BP's Forms 133 may well be inappropriate for a Form 133," BP Amoco was entitled to a hearing "to establish an administrative record that would support the allegations contained within its complaint."[4] *BP Amoco Corp. v. Lake Co. Property Tax Assessment Bd.*, 785 N.E.2d 1216, 1220, 1220 n. 5 (Ind. Tax Ct.2003).

The local and state property tax authorities sought, and we granted, review of the Tax Court's decision. *BP Amoco Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals*, 804 N.E.2d 749 (Ind.2003).

### Discussion

BP's argument is "its property assessments in the years 1995–98 were not uniform and equal with other properties.... The Board dismissed BP's claims without an evidentiary hearing, thereby thwarting BP's opportunity to actually demonstrate that the evidence it was prepared to introduce was appropriate for a Form 133 challenge." Br. of BP Amoco in Response at 12. More specifically, BP contends

> [T]he taxes it paid for assessment years 1995–1998 were "illegal as a matter of law." If BP had been afforded an evidentiary hearing before the Board, it would have presented objective evidence

---

**3.** BP's challenge to its 1999 assessment is not at issue in this appeal.

**4.** The Tax Court attributes to the Respondents listed above the assertion that "because BP used the wrong form, ... its attempt to obtain review and equalization counts for naught."

*BP Amoco Corp.*, 785 N.E.2d at 1219. The issue in this case is not whether BP mistakenly used the wrong form; it is whether Indiana Code Section 6–1.1–15–12 and Form 133 are available to provide BP the retrospective relief it seeks on the grounds it asserts.

that Lake County has systematically underassessed property in Lake County to the detriment of BP and that BP is entitled to refunds based on the illegal "systematic" underassessment.

*Id.* at 24–25 (citation and footnote omitted).

The property tax authorities respond that BP was not entitled to the hearing ordered by the Tax Court because under no set of facts was it entitled to the retrospective relief it sought. As set forth above, BP's claim to retrospective relief is predicated on its claim that its taxes were "illegal as a matter of law." But the taxing authorities argue that BP does not in fact contend that the taxes it challenges are illegal as a matter of law.

> Instead, without any precedent, BP seeks to expand the meaning of "illegal as a matter of law" beyond a determination of the legality of the tax itself to a determination of the legality of the assessments on which the amount of its [personal property taxes were] calculated. The statutes, however, contain no language that would expand their application beyond the challenged tax to the assessments used to calculate the amount of the tax.

Br. of Pet'r Lake Co. at 13.

The tax authorities maintain that "BP Amoco does not claim that any particular tax law is illegal; rather it asks for an equalization adjustment." And, they contend, neither statutes nor judicial precedent "provide authority for a taxpayer to claim an individual equalization adjust-ment." Br. of Appellant North Township Assessor at 4–5.

The taxing authorities seem to argue that appeals on Form 133 using the ground of "illegal as a matter of law" can only be used to challenge the facial illegality of a tax itself. For the reasons discussed below, we do not agree with that proposition. The Board's regulation in effect at the time of the assessments in question here provides for the use of Form 133 in certain circumstances where the procedure or method used in determining an assessment was erroneous. *See* Ind. Admin. Code tit. 50, r. 4.2–3–12 (1992 & 1996) ("Regulation 3–12"). But we do agree that BP is not entitled to the relief provided by Regulation 3–12 on the grounds it asserts here.[5]

Our analysis turns a large degree on our interpretation of Regulation 3–12. It is, therefore, important to note that this regulation was repealed on April 1, 2000, when the State Board of Tax Commissioners promulgated a new regulation in response to this court's decision in *State Bd. of Tax Comm'rs v. Town of St. John.*[6] *See* 23 Ind. Reg. 1608 (2000). While we express no opinion on the operation of appeals of property tax assessments made following the repeal, we do not discern anything in current law that is inconsistent with Regulation 3–12 or the interpretation we give it today.

The relevant provisions of Regulation 3–12 (which incorporate the relevant provisions of the statute) are as follows:

---

**5.** In cases disputing the availability of Form 133 to appeal a property tax assessment, the cases frequently make a distinction between whether the appropriate tax officials are required to make an objective or subjective determination. With only one exception, however, none of these cases arise under the "taxes, as a matter of law, illegal" provision. That case (*Rott Dev. Co. v. State Bd. of Tax* *Comm'rs,* 647 N.E.2d 1157 (Ind. Tax Ct.1995)) was resolved on other grounds and did not apply the objective/subjective distinction. We find the guidance in Regulation 3–12 sufficiently clear so as not to have to apply the objective/subjective distinction.

**6.** 702 N.E.2d 1034 (1998).

Sec. 12. (a) ... A taxpayer who claims that an error in an assessment entitles them to a refund must file both a Form No. 133 (50 IAC 4.2–2–9), for correction of the assessment and a Form No. 17T (50 IAC 4.2–2–9), for a refund. *A fact to keep in mind when dealing with these forms is that they are not to be used to challenge the methodology used in generating an assessment. There are appeal provisions for that purpose.*

...

(c) Form 133 required. Form No. 133 (Petition for Correction of Error) (50 IAC 4.2–2–9), is to be filed in duplicate with the auditor of the county where the assessment was made to correct one (1) of the following errors in the tax duplicate:

(1) The taxes, as a matter of law, were illegal.

(2) There was a mathematical error in computing an assessment.

(3) Through an error of omission by any state or county officer the taxpayer was not given credit for an exemption or deduction permitted by law.

...

(g) Grounds for filing Form No. 133. The following are examples of grounds for the filing of a petition for correction of error (Form No. 133) (50 IAC 4.2–2–9) and a petition for refund of taxes (Form 17T) (50 IAC 4.2–2–9):

(1) The taxes, as a matter of law, were illegal (subsection (c)).

(A) Property that was entered on the personal property tax return as taxable is not subject to property taxes, and for which no application for exemption is required.

### EXAMPLE

A vehicle subject to the motor vehicle excise tax was included on the personal property return as taxable.

(B) Taxpayer "A" challenged in tax court a procedure or method used in determining their assessment for year "Y", and the court decided in favor of Taxpayer "A".

(C) Taxpayer "B" has a suit pending in court against the state board with respect to year "Y" or any other year on the same facts and challenging the same procedure or method as Taxpayer "A". The board will order the correction of the assessment of Taxpayer "B" upon the filing of a Form No. 133 (50 IAC 4.2–2–9), for the assessment year challenged in the suit. After the assessment has been corrected, Taxpayer "B" is entitled to file a Form No. 17T (50 IAC 4.2–2–9), for a refund of taxes paid on that assessment.

(D) Taxpayer "C" does not have a suit pending as described above. He is entitled to a correction of assessments made on the same facts and using the same procedure or method as Taxpayer "A". By filing a Form No. 133 (50 IAC 4.2–2–9), they may obtain a correction of their assessments upon which taxes were due in the three (3) years preceding the date of filing. However, they may not obtain an assessment correction for a year that precedes year "Y". After those assessments have been corrected, Taxpayer "C" is entitled to file a Form No. 17T (50 IAC 4.2–2–9), for a refund of taxes paid on those assessments. Taxpayer "C" may also file a Form No. 133 (50 IAC 4.2–2–9), for the correction of any assessment upon which taxes were not yet due at the time of filing.

...

Ind. Admin. Code tit. 50, r. 4.2–3–12 (1992 & 1996) (emphasis added).

We think it apparent from the language and structure of Regulation 3–12 that appeals could not be made on Form 133 to challenge a "procedure or method used in determining [an] assessment" on grounds that the taxes were illegal as a matter of law. Such challenges to "the methodology used in generating an assessment" were required to utilize the "appeal provisions for that purpose" (*i.e.*, Form 130). Regulation 3–12(a). Said differently, if the Tax Court had decided a challenge on Form 130 to "a procedure or method used in determining [an] assessment ... in favor of [the] taxpayer," that would have constituted a declaration that the taxes were illegal as a matter of law, and then the challenging taxpayer (and certain other taxpayers) would have been entitled to use Form 133 to have their assessments corrected and Form 17T to obtain refunds.

Subsections (a) and (g)(1)(B), (C), and (D) of Regulation 3–12, when read together, make clear the way in which the "correction of error" mechanisms operated. Subsection (g)(1)(B) of Regulation 3–12 specified that "Taxpayer A," who had used the "appeal provisions," Regulation 3–12(a), of Form 130 to challenge successfully in the Tax Court "a procedure or method used in determining [its] assessments[,]" was entitled to a refund for a given year—because when (but only when) the Tax Court ruled in Taxpayer A's favor, its assessments became illegal as a matter of law. Subsection (g)(1)(C) extended a right to a correction of assessment and a refund to other taxpayers who had suits pending in the Tax Court on the same facts and challenging the same procedure or method as a taxpayer successful under Subsection (g)(1)(B)—because when (but only when) the Tax Court ruled in Taxpayer A's favor, Taxpayer B's assessments became illegal as a matter of law. And Subsection (g)(1)(D) extended a correction of assessment and right to a refund to

other taxpayers on the same facts and using the same procedure or method as a taxpayer successful under Subsection (g)(1)(B)—because when (but only when) the Tax Court ruled in Taxpayer A's favor, Taxpayer C's assessments became illegal as a matter of law.

The two cases cited by the Tax Court as examples of where taxpayers have been awarded relief who have been able to "show[ ] by probative evidence that their property is assessed and taxed differently than comparable properties" support this analysis. *See BP Amoco Corp. v. Lake County Prop. Tax Assessment Bd. of Appeals*, 785 N.E.2d 1216, 1219 (2003). In both *Zakutansky v. State Bd. of Tax Comm'rs*, 691 N.E.2d 1365 (Ind. Tax Ct.1998), and *Vonnegut v. State Board of Tax Comm'rs*, 672 N.E.2d 87 (Ind. Tax Ct.1996), the taxpayers prosecuted their appeals using Form 130, not Form 133.

In short, appeals challenging the legality of assessments were required to be made on Form 130. Assessments determined to be illegal could be corrected (and refunds obtained) using Form 133. The names of the respective forms, set forth above, well illustrate the distinction: Form 130 is called a "Petition for Review of Assessment"; Form 133, a "Petition for Correction of Error." Ind. Admin. Code tit. 50, r. 4.2–2–9 (1992 & 1996).

BP was not entitled to file appeals on Form 133 to challenge its 1995–1998 assessments on grounds that "Lake County has systematically underassessed property in Lake County to the detriment of BP and BP is entitled to refunds based on the illegal underassessment." Br. of BP Amoco in Response at 24–25. BP is clearly challenging the methodology used in generating the assessment of its property. The Regulation explicitly states that "these forms ... are not to be used to

challenge the methodology used in generating an assessment. There are appeal provisions for that purpose." Regulation 3–12 § 12(a). BP failed to challenge the assessments in 1995–1998 within time periods for which Form 130 was available; it is foreclosed from using Form 133 for these purposes. No hearing was required to make this determination.

BP was, of course, entitled to use the "appeal provisions" referred to in Regulation 3–12 to challenge the "methodology used in generating" its 1999 assessment and did so using the "appeal provisions" set forth in Indiana Code Section 6–1.1–15–1 and Indiana Administrative Code Title 50, Regulation 4.2–3–3 and Form 130. Subsection (g)(1)(B) of Regulation 3–12 made clear that if that challenge is successful, it would be entitled to correction and refund for that year.[7,8]

### Conclusion

The decision of the Indiana Tax Court in this case is reversed. The decisions of the property tax authorities dismissing BP Amoco's appeals on Form 133 are affirmed.

SHEPARD, C.J., and DICKSON and BOEHM, J.J., concur. RUCKER, J., concurs in result.

---

7. The property tax authorities' arguments in their briefs in this case relating to the availability of an "individual equalization adjustment" would appear to also relate to BP's appeals on Form 130. This issue is addressed in *Dep't of Local Gov't Fin. v. Commonwealth Edison Co. of Ind., Inc.*, No. 49S10–0307–TA–293, 820 N.E.2d 1222, 1225-27, 2005 WL 67130 (Ind. Jan. 13, 2005).

8. We also recognize that BP might conceivably be entitled to relief if it meets the requirements of the hypothetical Taxpayer "C" in Indiana Administrative Code Title 50, Regulation 4.2–3–12(g)(1)(D). However, BP advances no claim in that regard in this case.