**BP PRODUCTS NORTH AMERICA INC. f/k/a BP Amoco Corporation, Petitioner,**

v.

**John S. MATONOVICH, in his official capacity as the North Township Assessor, the Lake County Property Tax Assessment Board of Appeals, Paul G. Karras, Secretary and in his official capacity as the Lake County Assessor, and the Department of Local Government Finance, Beth Henkel, Commissioner, Respondents.**

No. 49T10–0304–TA–17.

Tax Court of Indiana.

Feb. 21, 2006.

Jeffrey T. Bennett, Steven G. Cracraft, Hamish S. Cohen, Bingham McHale LLP, Indianapolis, for Petitioner.

John J. Butler, Charles C. Meeker, Parker, Poe, Adams & Bernstein LLP, Raleigh, NC, Brian P. Popp, Laszlo & Popp, LLP, Merrillville, Steve Carter, Attorney General of Indiana, Andrew W. Swain, Special Counsel, Tax Section, Amber Merlau St. Amour, Deputy Attorney General, Indianapolis, for Respondents.

**FISHER, J.**

BP Products North America, Inc. (BP) appeals the final determination of the Indiana Board of Tax Review (Indiana Board) valuing its real and personal property for the 1999 tax year. On appeal, the Court must decide whether the Indiana Board erred when it determined that BP was not entitled to an equalization adjustment for the year at issue.[1]

## RELEVANT FACTS AND PROCEDURAL HISTORY

BP, one of the largest oil and gasoline producers/retailers in the United States, owns both real and personal property in North Township, Lake County, Indiana. In June of 2000, BP appealed its 1999 assessment to the State Board of Tax Commissioners (State Board), alleging that its property was "assessed at a level of value [ ] higher than the level of assessment for other tangible property in Lake County, Indiana."[2] (*See, e.g.,* Cert. Admin. R. at 3 (footnote added).)

In August of 2002, the Indiana Board[3] conducted a two-day hearing on BP's ap-

---

1. In its complaint, BP also alleges that in denying the equalization adjustment, the Indiana Board violated its federal due process and equal protection rights under the Fourteenth Amendment to the U.S. Constitution, as well as its state equal privileges rights under Article I, § 23 of the Indiana Constitution. (Pet'r Verified Pet. For Judicial Review at 14–15.) (*See also* Pet'r Oct. 1, 2003 Br. at 41–48.) As a result of these alleged violations, BP claims that it is entitled to relief under 42 U.S.C. §§ 1983 and 1988. This Court has in the past, however, rejected analogous constitutional arguments. *See Town of St. John v. State Bd. of Tax Comm'rs,* 690 N.E.2d 370, 388–97 (Ind. Tax Ct.1997) ("*Town of St. John III* "), *rev'd in part on other grounds by* 702 N.E.2d 1034 (Ind.1998). Consequently, the Court denies BP relief under the provisions of 42 U.S.C. §§ 1983 and 1988.

2. BP's appeal is comprised of 79 separate "Petitions to the State Board of Tax Commissioners for Review of Assessment" (Forms 131) challenging the 1999 assessments of its real and personal property at its Whiting (Indiana) Refinery and Chemical Plant. The Court refers to the 79 Forms 131 collectively as one appeal.

3. On December 31, 2001, the legislature abolished the State Board.2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the legislature created the Indiana Board of Tax Review (Indiana Board) as "successor" to the State Board. IND. CODE ANN. §§ 6–1.5–1–3; 6–1.5–4–1 (West 2006) (eff.1–1–02); 2001 Ind. Acts 198 § 95.

peal. At the hearing, BP submitted numerous sales/assessment ratio studies and valuation reports, explaining that they showed that while property in Lake County, in general, was assessed at a level well below its fair market value during 1999, BP's property was assessed at a level higher than its fair market value. Consequently, BP requested that an equalization adjustment (i.e., a reduction) be applied to its assessment to account for the disparate levels of assessment within the county.

On February 20, 2003, the Indiana Board issued a final determination in which it denied BP's request for relief. The Indiana Board's denial was based on two grounds. First, the Indiana Board determined that equalization was a type of assessment relief available only to a group, or class, of taxpayers, and not to an individual taxpayer such as BP. Second, the Indiana Board determined that even if BP was entitled to an individual equalization adjustment, its sales/assessment ratio studies and valuation reports were irrelevant because they utilized the wrong standard (fair market value) to measure assessment uniformity.

On April 4, 2003, BP filed an original tax appeal. The Court heard the parties' oral arguments on March 5, 2004. On January 13, 2005, while the case was still pending before the Tax Court, the Indiana Supreme Court issued an opinion in *Department of Local Government Finance v. Commonwealth Edison Co. of Indiana*. In that case, the Supreme Court ruled that there was ample statutory authority allowing individual taxpayers to seek adjustments to their assessments on the grounds that their property taxes were higher than they would have been had other property in the county been properly assessed. *Dep't of Local Gov't Fin. v. Commonwealth Edison Co. of Ind.*, 820 N.E.2d 1222, 1226 (Ind.2005) (hereinafter, *ComEd*), *reh'g denied*.

In addition, the Supreme Court ruled that, in the years preceding 2002, the use of sales/assessment ratio studies was irrelevant in proving that a taxpayer was entitled to an equalization adjustment. *See id.* at 1230. Indeed, as the Supreme Court explained, prior to 2002 Indiana did not assess property on the basis of its fair market value (FMV), but rather on the basis of its "true tax value" (TTV). *See id.* at 1224. In turn, the TTV of property was the value as determined by an application of the State Board's assessment regulations. *See id.* at 1229 (citation omitted). Thus, "evidence ... based on FMV as the standard by which uniformity w[as] measured[ ] was not relevant to determining whether [a taxpayer] was entitled to an [equalization] adjustment in the TTV system." *Id.* at 1230. Rather, "the standard by which uniformity was [to be] measured in the TTV system was as follows: [whether] property of the class in question [was] accurately assessed in accordance with the applicable regulations of the State Board." *Id.*

In light of the Supreme Court's ruling in *ComEd*, this Court ordered the parties to file a second set of briefs to address whether any other evidence BP submitted at the administrative hearing supported its claim for an equalization adjustment. The Court also conducted a second oral argument on September 9, 2005. Additional facts will be supplied as necessary.

## OPINION AND ANALYSIS

### Standard of Review

■ This Court gives great deference to final determinations of the Indiana Board when it acts within the scope of its authority. *Miller Vill. Prop. Co. v. Indiana Bd. of Tax Review*, 779 N.E.2d 986, 988 (Ind.

Tax Ct.2002), *review denied.* Consequently, the Court will reverse a final determination of the Indiana Board only if it is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory jurisdiction, authority, or limitations;

(4) without observance of procedure required by law; or

(5) unsupported by substantial or reliable evidence.

IND. CODE ANN. § 33–26–6–6(e)(1)–(5) (West 2006).

■ The burden of demonstrating the invalidity of an Indiana Board final determination rests with the challenging party. *See Osolo Twp. Assessor v. Elkhart Maple Lane Assocs. L.P.,* 789 N.E.2d 109, 111 (Ind. Tax Ct.2003). To meet this burden, the challenging party must present a prima facie case, or one in which the evidence is "sufficient to establish a given fact and which if not contradicted will remain sufficient." *Lacy Diversified Indus., Ltd. v. Dep't of Local Gov't Fin.,* 799 N.E.2d 1215, 1218–19 (Ind. Tax Ct.2003) (citation omitted).

## Discussion

■ "Equalization is a process applied to certain taxpayers and their property by which the assessed value of a taxpayer's property is adjusted so that it bears the same relationship of assessment value to . . . true tax value as other properties within the same taxing jurisdiction."[4] *GTE N. Inc. v. State Bd. of Tax Comm'rs,* 634 N.E.2d 882, 886 (Ind. Tax Ct.1994) (internal quotation and punctuation omitted) (footnote added). In *ComEd,* the Indiana Supreme Court established that in order to demonstrate entitlement to an equalization adjustment for the 1999 tax year, a taxpayer must "produce evidence that the assessed values in [its c]ounty were not uniform and equal *with respect to the TTV* of the classes of property in question." *ComEd,* 820 N.E.2d at 1230 (emphasis in original). In other words, a taxpayer is "required to come forward with evidence that the assessed valuation as determined by the State Board of its [ ] property . . . in proportion to the TTV of that property was not uniform and equal to the assessed valuation as determined by the township assessors of other taxable property in the [c]ounty in proportion to the TTV of that property." *Id.*

■ BP admits that its initial case-in-chief relied on the FMV-based sales/assessment ratio studies and valuation reports that were later held by the Supreme Court in *ComEd* as an invalid means of proving entitlement to an equalization adjustment under the TTV system. (*See* Pet'r May 6, 2005 Br. at 2.) Nevertheless, BP alleges that it also produced evidence at the administrative hearing as required by the holding in *ComEd.*

More specifically, BP explains that, during the administrative hearing, it submit-

---

4. In other words, "the equalization process provides . . . a method to cure assessment problems and bring all assessments into compliance with Article X, § 1." *GTE N. Inc. v. State Bd. of Tax Comm'rs,* 634 N.E.2d 882, 886 (Ind. Tax Ct.1994). Article X, § 1 of Indiana's Constitution states that

The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.

IND. CONST. Art. X, § 1. *See also* IND. CODE ANN. § 6–1.1–2–2 (West 2006).

ted a copy of the State Board's March 31, 1998 report entitled "An Analysis of Assessment Practices In Lake County, Indiana" (Analysis) as well as testimonial evidence thereon. (Cert. Admin. R. at 2386; Pet'r May 6, 2005 Br. at 2.) This Analysis, BP explains, summarizes the results of the State Board's 1997 assessment/assessment ratio study—a study that compared the assessments, as determined by the local township assessors, of randomly selected residential, commercial, and industrial real properties within the various townships of Lake County with the assessments of those same properties as determined by the employees of the State Board, Indiana's "expert assessors." Indeed, as the Analysis states:

> [a]n assessment ratio study was conducted by the [State] Board to measure the level of assessment and level of uniformity within each township in Lake County. With this approach, approximately 1,200 parcels [of real property] were assessed by state expert assessors from August 1997 through March 1998 throughout Lake County.
>
> Assessment ratios, which measure the level of assessment, were calculated for each parcel and property class, using the following equation: Local Assessment [divided by] State Assessment [equals] Assessment Ratio. An assessment ratio above one (1) indicates that the sample parcel was over-assessed, while a ratio below one (1) indicates that the sample parcel was under-assessed. An assessment ratio equaling one (1) indicates that the local and state assessors agreed on the value of the property.
>
>      \*     \*     \*     \*     \*     \*

> Based on these assessment ratios, the level of uniformity was calculated for each township and property class.[5]

(Cert. Admin. R. at 2390–91 (footnote added).)

In turn, the Analysis reveals that in North Township, where BP's property is located, residential real property was under-assessed by 38%, commercial real property was under-assessed by 11%, and industrial real property was under-assessed by 8%. (Cert. Admin. R. at 2416.) BP alleges that this evidence of underassessment in North Township, in conjunction with the parties' stipulation that BP's property was accurately assessed at 100% of its TTV, clearly "demonstrates that BP is entitled to an equalization adjustment to the assessed value of its real and personal property in Lake County, Indiana [ ] for the 1999 assessment year[.]"[6] (*See* Pet'r May 6, 2005 Br. at 2, 5, 8 (footnote added).) The Court, however, disagrees.

■ In Indiana, all tangible property is subject to assessment and taxation. *See* IND. CODE ANN. § 6–1.1–2–1 (West 1999). Because not all property is alike, however, it is necessary "to adopt different methods for assessment of different classes of property in order to achieve a just and uniform valuation [of all property]." *State Bd. of Tax Comm'rs v. Lyon & Greenleaf Co.*, 172 Ind.App. 272, 359 N.E.2d 931, 934 (1977) (citation omitted). Consequently, "[t]he constitutional requirement of uniform and equal taxation [as set forth in Article X, § 1 of the Indiana Constitution (see fn. 4, *supra*)] requires that [ ] assessments be consistent *with similar property of the same classifi-*

---

**5.** As the Analysis explicitly notes, however, "assessment ratios were only calculated for improved, real property. Land values were assumed to be accurate, as was personal property." (Cert. Admin. R. at 2395.)

**6.** Specifically, BP asserts that its property "is entitled to a 38% reduction to equalize it with residential properties [in North Township]." (Pet'r May 6, 2005 Br. at 19.)

*cation." Harrington v. State Bd. of Tax Comm'rs*, 525 N.E.2d 360, 361 (Ind. Tax Ct.1988) (emphasis added). *See also Lyon & Greenleaf Co.*, 359 N.E.2d at 935 ("[u]niformity and equality in tax burden do not occur unless identical property is assessed at the same [ ] value").

The General Assembly has divided tangible property into two basic classes: "personal property" and "real property." [7] *See* IND. CODE ANN. §§ 6–1.1–1–11(a), – 15 (West 1999) (footnote added). The General Assembly also delegated to the State Board the duty to adopt rules concerning the assessment of these two types of property. IND. CODE ANN. § 6–1.1–31–1(a)(3) (West 1999). Consequently, the State Board promulgated two independent sets of regulations regarding the methodologies by which TTV is ascertained for these two different classes of property. *See generally* IND. ADMIN. CODE tit. 50, r. 4.2–1–1 through 4.2–16–1 (1996) (assessment of personal property); IND. ADMIN. CODE tit. 50, r. 2.2–1–1 through 2.2–16–6 (1996) (assessment of real property).

The Supreme Court's ruling in *ComEd* recognized that a taxpayer's entitlement to an equalization adjustment is predicated on how other property within the same classification is assessed. Indeed, as the Justices on the high court explained:

> [w]e acknowledge that the TTV system is subject to the criticism that, because the regulations for assessing different classes of property operated differently from one another, there was no common standard for measuring uniformity. . . . *But so long as TTV was set differently for different classes of property, uniformity . . . consisted of the assessed valuations (as determined by the appropriate assessing authorities) of each class of property in question being in proportion to the TTV of each respective class.*

*ComEd*, 820 N.E.2d at 1230–31 (emphasis added).

■ In this case, the evidence reveals that approximately 80% of BP's 1999 assessment was attributable to the valuation of its personal property. (*See* Cert. Admin. R. at 1748, 2684.) Nevertheless, BP relies entirely on how *real* property in North Township was assessed to support its overall claim for equalization. Consequently, BP failed to show that the assessment of its personal property was not uniform with the assessment of other *personal* property as required by the holding in *ComEd*.[8, 9]

---

7. Within these classifications, many sub-classifications exist. *See, e.g.*, IND. CODE ANN. §§ 6–1.1–6; –6.2, –6.5, –6.7 (West 1999) (classifying land as either native forest, windbreak, wildlife habitat, and filter strips). *See also, e.g.*, IND. ADMIN. CODE tit. 50, rr. 2.2–7, – 10 (1996) (classifying improvements as either residential, general commercial, or industrial).

8. BP makes much of the fact that the Supreme Court used the plural form of the word "class" in *ComEd* when it stated that a taxpayer must "produce evidence that the assessed values in [its c]ounty were not uniform and equal *with respect to the TTV* of the *classes* of property in question." (*See* Pet'r July 11, 2005 Reply Br. at 5 (*citing Dep't of*

*Local Gov't Fin. v. Commonwealth Edison Co. of Ind.*, 820 N.E.2d 1222, 1230 (Ind.2005) (emphasis in original and added), *reh'g denied*).) Indeed, BP argues that "[t]he use of the plural 'classes' indicates that . . . multiple classes of property [i.e., both real and personal property] may be involved in one equalization analysis." (Pet'r May 6, 2005 Br. at 18.) (*See also* Pet'r July 11, 2005 Reply Br. at 3 (alleging that through the use of the plural "classes," the Supreme Court meant that equalization is to occur among properties of the same tax "strata" which, in Indiana, is *all* real and personal property combined).) Accordingly, BP claims that to the extent the Supreme Court used the singular form of the term "class" when it stated later in *ComEd* that *"so long as TTV was set differently for*

## CONCLUSION

For the aforementioned reasons, the Court AFFIRMS the final determination of the Indiana Board.

*different classes of property, uniformity ... consisted of the assessed valuations (as determined by the appropriate assessing authorities) of each class of property in question being in proportion to the TTV of each respective class,"* it contradicted itself and the later statement carries no weight. (*See* Oral Argument Tr. at 47; Pet'r July 11, 2005 Reply Br. at 5 n. 6.)

"Uniformity and equality in tax burden do not occur unless *identical* property is assessed at the same tax value." *State Bd. of Tax Comm'rs v. Lyon & Greenleaf Co.*, 172 Ind. App. 272, 359 N.E.2d 931, 935 (1977) (emphasis added). Thus, the Court is not persuaded by BP's argument that the Supreme Court intended that evidence of real property assessments could be used to challenge the assessment of personal property. Furthermore, the Court notes that while the aforementioned "contradictory" statement is dicta as it relates to the decision in *ComEd,* the Court finds the statement instructional as it

relates to *this* case. *See* BLACK'S LAW DICTIONARY 1102 (8th ed.2004) (defining obiter dictum as "[a] judicial comment made while delivering a judicial opinion ... that is unnecessary to the decision in the case ... although it may be considered persuasive").)

9. BP maintains that "[f]or purposes of this litigation, the parties have agreed that BP's real and personal property was accurately assessed at ... 100% [] of its TTV." (Pet'r May 6, 2005 Br. at 5.) The Respondents claim they never made such an agreement. (Resp't Oct. 12, 2005 Br. at 11.) The parties also disagree as to whether the State Board's Analysis, which evaluates real property assessment and uniformity in Lake County during 1997 is even relevant to BP's 1999 assessment. (*Cf.* Resp't Oct. 12, 2005 Br. at 11–12 *with* Pet'r July 11, 2005 Reply Br. at 13–15.) Given the Court's holding, however, it need not address these issues.